UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**PENN MARITIME, INC.**                                                                                            **CIVIL ACTION**

**VERSUS**                                                                                                                                                                       **No. 13-5441**

**CHEVRON U.S.A. INC. ET AL.**                                                   **SECTION I**

## ORDER

Before the Court is a motion[1] for summary judgment filed by defendant, Harvey Gulf International Marine, LLC ("Harvey Gulf"). The motion is opposed by plaintiff, Penn Maritime, Inc. ("Penn"),[2] Harvey Gulf's co-defendants, Chevron U.S.A. Inc. and Chevron Shipping Company, LLC (collectively, "Chevron"),[3] and Smith Marine Towing Corporation ("Smith Marine"), a third-party defendant and co-defendant pursuant to Rule 14(c) of the Federal Rules of Civil Procedure.[4]

Harvey Gulf asserts that "Penn has no evidence that the assist tug HARVEY LIGHTNING caused any damage to the barge PENN NO. 120."[5] Penn's opposition and supplemental memorandum focus on the deposition testimony of Chase Fazzio, captain of Smith Marine's tug, the CAPTAIN SAM,[6] who testified that he heard the captain of the HARVEY LIGHTNING communicate over the radio that his vessel was banging against the PENN NO.

---

[1] R. Doc. No. 52.
[2] R. Doc. No. 59.
[3] R. Doc. No. 58.
[4] R. Doc. No. 61. Harvey Gulf made a third-party demand against Smith Marine and tendered Smith Marine as a direct defendant pursuant to Rule 14(c). *See* R. Doc. No. 14, at 8-12.
[5] R. Doc. No. 52, at 1.
[6] R. Doc. No. 69, at 2.

120.[7] Despite Harvey Gulf's assertion that this is "purely hearsay testimony,"[8] these statements are admissible pursuant to the hearsay exclusion for admissions of a party opponent. *See* Fed. R. Evid. 801(d)(2). Accordingly, the Court finds that there is a genuine issue of material fact for trial as to whether the HARVEY LIGHTNING caused any damage to the PENN NO. 120.

Harvey Gulf also asserts that it is entitled to summary judgment because "the HARVEY LIGHTNING followed the orders she was given, which was her only duty as an assist tug."[9] Harvey Gulf is correct that "[a]ssist tugs have a duty to follow the orders of others rather than taking action on their own," *In re Can Do, Inc. I*, No. 02-67, 2004 WL 2216529, at *9 (E.D. La. Sept. 30, 2004) (Africk, J.), but such assist tugs are only exonerated from liability if they are not negligent in carrying out their orders. *See Osprey Ship Mgmt., Inc. v. Jackson Cnty. Port Auth.*, No. 05-390, 2007 WL 4287708, at *4 (S.D. Miss. Dec. 4, 2007) ("When a[n] [assist] tug is merely providing the motive power to the towed ship, with the towed ship's personnel exclusively directing and controlling the movements of both vessels, then fault cannot be imputed to an **otherwise non-negligent tug**.") (emphasis added); *see also Baker, Carver & Morrell Ship Supplies, Inc. v. Mathiasen Shipping Co.*, 140 F.2d 522, 525 (2d Cir. 1944) ("A[n] [assist] tug in such a situation while acting wholly under the direction of the steamer and her pilot is not liable for damage done in the course of the movement of the steamer being assisted unless it is shown that she is guilty of some **independent negligence**.") (emphasis added). The

---

[7] R. Doc. No. 69-1, at 27 ("Q. Because banging on the barge could cause damage, correct? A. Yes, sir. Q. And you heard the captain of the HARVEY LIGHTNING say that he was starting to bang on the barge PENN 120, correct? MR. POTTS: Objection to form. THE WITNESS: Yes, sir.").
[8] R. Doc. No. 65, at 3.
[9] R. Doc. No. 52, at 1.

Court finds that there is a genuine issue of material fact as to whether the HARVEY LIGHTNING breached its duty to Penn.[10] Accordingly,

>  **IT IS ORDERED** that the motion is **DENIED**.

New Orleans, Louisiana, July 28, 2014.

>  _____
>  **LANCE M. AFRICK
>  UNITED STATES DISTRICT JUDGE**

---

[10] *See* R. Doc. No. 69-1, at 15 ("Q. You as the captain of the CAPTAIN SAM would be responsible for making sure that the job was done in a safe manner; is that correct? A. Yes, sir. Q. And you would have to assess whether it was safe to tie up and whether it was safe to push on the barge? A. Yes, sir. Q. And if you felt for any reason it wasn't safe to do that then you would stop the operation? A. Immediately. Q. And you had stop work authority? A. Yes, sir. . . . Q. Did you ever exercise stop-work authority during the Walker Ridge job? A. Just that one time on -- I think it's one time on August 19th at 2130. Whenever I got off the barge right then, that's when I had to tell them it was too rough. It was too rough, plus I couldn't put enough power on the barge because I was pushing it over.").